(No. 61403.—

R. W. SAWANT & COMPANY *et al.*, Appellants, v. ALLIED PROGRAMS CORPORATION, Appellee.

*Opinion filed February 21, 1986.*

Myron M. Cherry and Peter Flynn, of Cherry & Flynn, of Chicago, for appellants.

Wildman, Harrold, Allen & Dixon, of Chicago (Howard T. Brinton, Richard J. Hickey and Randy J. Curato, of counsel), for appellee.

CHIEF JUSTICE CLARK delivered the opinion of the court:

R. W. Sawant & Company (Sawant) brought an action in the circuit court of Cook County alleging breach of contract and fraudulent misrepresentation against a number of defendants, including Ben Kozloff, Inc. (Kozloff), and Allied Programs Corporation (Allied), a New York corporation. Kozloff then filed a third-party complaint against a number of parties, including Allied. Sawant and Kozloff separately served Allied with service of process in New York. After an order of default and a default judgment were entered against Allied and in favor of Sawant and an order of default was entered against Allied and in favor of Kozloff, Allied filed a special and limited appearance and a motion to quash the service of summons.

The circuit court found that Allied had used improper procedure and had sufficient contacts with Illinois to justify jurisdiction. Therefore, the court struck the defend-

ant's special and limited appearance and denied its motion to quash. Allied appealed and the appellate court reversed (130 Ill. App. 3d 71). We granted Sawant and Kozloff's petition for leave to appeal (94 Ill. 2d R. 315).

Sawant is a company headquartered in Bombay, India, which exports seafood; whereas, Kozloff is an Illinois corporation which imports seafood. Sawant and Kozloff entered into an agreement whereby Sawant would supply Kozloff with a large quantity of its goods. Because such imports must be inspected by the Federal Food and Drug Administration (FDA) and pass FDA standards before they are allowed into this country, Sawant and Kozloff discussed obtaining a rejection-risk insurance policy to insure against losses if the FDA would reject any or all of the shipments of seafood that were contemplated.

Pursuant to these discussions Kozloff contacted the Chicago office of Bayly, Martin and Fay, Inc. (BMF), an insurance broker, in an attempt to obtain the insurance. BMF was unable to arrange for the insurance through domestic insurers so BMF's New York office contacted Allied, a New York corporation licensed as an excess line broker. Allied subsequently arranged for about 15 European insurers to underwrite the risk.

After the insurance was obtained, Allied sent a binder confirmation to BMF's New York office listing Kozloff as the assured. BMF's New York office subsequently sent a cover letter and the binder confirmation to its Chicago office. The cover letter stated:

> "Enclosed is Allied Program's Binder Confirmation on Ocean and Rejection Insurance for Ben Kozloff, Inc. which may be presented. If you wish you can prepare a BMF Binder statement indication [*sic*] the same conditions.
>
> Also enclosed is our invoice [number] in the amount of $9,162.00 representing the deposit premium as calcu-

lated ***."

As stated in the cover letter quoted above, BMF sent a premium statement to Kozloff on a BMF invoice. Kozloff subsequently wrote a check for this amount to BMF's New York office. BMF's New York office then issued a check to Allied.

The FDA refused to allow several of Sawant's shipments of seafood to enter the country. Kozloff filed claims for these shipments with BMF's New York office, which then notified Allied, and Allied drew checks on its account payable to Kozloff. Allied sent these checks to BMF's New York office, and that office forwarded the checks to BMF's Chicago office, which in turn forwarded the checks to Kozloff.

When several claims were not paid, Sawant, as a third-party beneficiary of the insurance agreement, sued Kozloff, BMF and the European insurers. On December 21, 1981, Sawant amended its complaint and named Allied as a defendant. After being served with summons in New York in June 1982, Allied took no action, and an order of default was entered against it on August 11, 1982. A default judgment was later entered on October 13, 1982.

Kozloff filed a third-party complaint against Allied and several other parties on July 9, 1982, and served Allied in New York. Allied took no action, and on October 12, 1982, an order of default was entered against Allied and in favor of Kozloff.

On December 1, 1982, Allied filed a special and limited appearance and a motion to quash the service of summons of Sawant and Kozloff. The circuit court struck Allied's special and limited appearance and denied its motion to quash, finding that Allied had not used proper procedure, had not diligently presented its defense, and that Allied was subject to jurisdiction in Illi-

nois.

The appellate court reversed, holding that Allied had used proper procedure, that a defendant's diligence in presenting a defense is not required when jurisdiction is contested, and that Allied was not subject to personal jurisdiction in Illinois. 130 Ill. App. 3d 71.

Two issues are presented for our review, namely, (1) whether the appellate court was correct in holding that the defendant used proper procedure in contesting jurisdiction, and (2) whether the defendant is subject to jurisdiction in Illinois.

We note initially that *"[a] judgment, order or decree entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, is void, and may be attacked at any time or in any court, either directly or collaterally."* (Emphasis added.) (*Barnard v. Michael* (1945), 392 Ill. 130, 135; *City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108, 112. See *Dorr-Wood, Ltd. v. Department of Public Health* (1981), 99 Ill. App. 3d 170, 173.) A defendant, therefore, can properly challenge a court's jurisdiction after a default judgment or order is entered.

Sawant and Kozloff argue Allied's filing of a special and limited appearance after the default judgment and order of default had been entered amounted to a collateral attack on the circuit court's judgment and orders under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401). They concluded, however, that section 2—1401 does not provide relief in this instance since Allied was not diligent in its own defense. However, their argument fails. A defendant who is contesting personal jurisdiction is not "strictured by either the time limitations [citation] or the requirement of due diligence to which petitions relying on" section 2—1401 must conform. *Home State Savings Association*

*v. Powell* (1979), 73 Ill. App. 3d 915, 917. (*Home State Savings* cited section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72); this section became section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401).)

As the appellate court correctly pointed out in this case, "section 2—1401, which provides relief from default judgments, *** does not affect a party's right to seek relief from a void order or judgment by any other method. See Ill. Rev. Stat. 1983, ch. 110, par. 2—1401(f)." 130 Ill. App. 3d 71, 74.

Allied chose one method of attacking the personal jurisdiction of the Illinois courts. Although the method Allied chose may not be the most used or the one most favored, it was nonetheless permissible and proper.

Having resolved the first issue, we now turn to the second issue: namely, whether the defendant, Allied, was subject to jurisdiction in Illinois.

The burden of proving a valid basis for the assertion of jurisdiction over a nonresident defendant rests with the party seeking to impose jurisdiction. (*Stephens v. Northern Indiana Public Services Co.* (1980), 87 Ill. App. 3d 961, 965.) Consequently, this burden rests with Sawant and Kozloff.

Sawant and Kozloff argue that certain portions of section 121—3 of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 733—3) help to support jurisdiction over Allied. The portions are as follows:

> "Transaction of Insurance Business Defined. Any of the following acts in this State, effected by mail or otherwise by or on behalf of an unauthorized insurer, constitutes the transaction of an insurance business in this State.
>
> * * *
>
> (d) the receiving or collection of any premium, commission, *** or other consideration for any insur-

ance or any part thereof.

(e) The issuance or delivery of contracts of insurance to residents of this State \*\*\*.

(f) Directly or indirectly acting as an agent for or otherwise representing or aiding on behalf of another any person or insurer in the solicitation, negotiation, procurement or effectuation of insurance \*\*\* or delivery of policies or contracts, \*\*\* or investigation or . adjustment of claims or losses or in the transaction of matters subsequent to effectuation of the contract, \*\*\* or in any other manner representing or assisting a person or insurer in the transaction of insurance with respect to subjects of insurance resident, located or to be performed in this State.

\* \* \*

The venue of an act committed by mail is at the point where the matter transmitted by mail is delivered and takes effect." Ill. Rev. Stat. 1983, ch. 73, par. 733—3.

The statute requires that the acts listed must take place "in this State." The facts indicate that Allied did not act in this State. Besides, we agree with the appellate court in this case that "the Illinois Insurance Code will not provide a basis for jurisdiction where the long-arm statute does not." 130 Ill. App. 3d 71, 76.

Under this court's opinions in *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, and *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, it is clear that when jurisdiction is alleged under the long-arm statute, the first step is to determine if jurisdiction is proper under that statute. If jurisdiction is found to be proper under our long-arm statute, then we reach the second step, which is to determine if jurisdiction is permissible under the due process clause. Clearly, if jurisdiction is not found to be proper under the long-arm statute, there is no need to determine whether jurisdiction is constitutionally permissible. *Cook Associates,*

*Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 197-98; *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436-37.

Section 2—209 of the Code of Civil Procedure provides in pertinent part:

"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;

\* \* \*

(c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this Section." Ill. Rev. Stat. 1983, ch. 110, par. 2—209.

Allied is not subject to jurisdiction under either of these sections of the long-arm statute since neither it nor an agent transacted any business in Illinois nor committed a tortious act in Illinois. The facts indicate that all of Allied's activities took place in New York. BMF's New York office contacted Allied in New York. Allied contacted the foreign insurers from New York. Allied sent the binder and checks made payable to Kozloff to BMF's New York office. In addition, jurisdiction would not be proper under the tortious-act section of the long-arm statute since an economic loss which is felt in Illinois is not sufficient to confer jurisdiction in our courts when the acts occurred outside of Illinois. *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 438-39.

Having found that jurisdiction would not be proper

under the Illinois long-arm statute, there is no need for us to consider whether jurisdiction would be constitutionally permissible. *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 197-98; *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436-37.

Although Sawant and Kozloff have not alleged that jurisdiction was proper under the "doing business" doctrine, we will briefly consider if jurisdiction would have been proper under it. Under this doctrine, a nonresident corporation will be considered to have consented to being sued in Illinois if the nonresident corporation is doing business in Illinois. (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 199.) Doing business for purposes of jurisdiction has been defined as a corporation's operating within a State " 'not occasionally or casually, but with a fair measure of permanence and continuity.' " (87 Ill. 2d 190, 203.) Since there was no evidence of any activity by Allied in this State, jurisdiction would not have been proper under the "doing business" doctrine.

For the aforementioned reasons we affirm the appellate court.

*Judgment affirmed.*